## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| IN RE MARSHALL & MELHORN, LLC | ) | Case No. 3:23-cv-01181 |
| DATA BREACH LITIGATION | ) | |
| | ) | Judge James R. Knepp, II |
| This Document Relates to: All Actions | ) | |
| | ) | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Fed. R. Civ. P. 23(e), and this Court's Preliminary Approval Order (Doc. 33), Plaintiffs Mark Hendrix and Kaitlyn Thiel ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, respectfully move this Court for Final Approval of the of Class Action Settlement. The $800,000.00 non-reversionary Settlement Fund is a substantial recovery for the approximately 47,000 Class Members and is fair, reasonable, and adequate by all measures.

In support thereof, Plaintiffs rely upon the accompanying Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement; the Declaration of Philip J. Krzeski  in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Krzeski Decl.") attached as **Exhibit 1**; the Settlement Administrator Declaration ("Simpluris Decl.") attached as **Exhibit 2**; Plaintiffs' Unopposed Motion for Preliminary Approval, previously granted; records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court at or before the January 13, 2024 Final Approval Hearing or as soon as practicable thereafter. For the Court's convenience, a Proposed Order Granting Final Approval of Class Action Settlement is attached as **Exhibit 3**.

i

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................1

II.  INCORPORATION BY REFERENCE ...............................................................3

III. BACKGROUND .................................................................................................3

IV.  SETTLEMENT TERMS .....................................................................................3

V.   NOTICE TO CLASS ..........................................................................................3

    A.  Direct and Digital Notice Program ...........................................................3

    B.  Settlement Website and Toll-Free Telephone Number..............................6

    C.  Effectiveness of Notice .............................................................................7

VI.  LEGAL ARGUMENT.........................................................................................8

    A.  Final Class Certification for Settlement Purposes is Appropriate ............8

        1. The Elements of Rule 23(a) and Rule 23(b)(3) are Satisfied................8

    B.  The Notice Program Preliminarily Approved by the Court was the Best Notice
        Practicable Under the Circumstances and was Successful ........................8

    C.  The Settlement Merits Final Approval.....................................................10

        1. The Settlement Resulted from Mediated, Arms-Length Negotiations Without
        Any Risk or Evidence of Fraud or Collusion ......................................11

        2. The Complexity, Expense, Likely Duration of the Litigation, and Substantial
        Risk for Plaintiffs Warrants Final Approval and Settlement ...............11

        3. The Fact Plaintiffs' and Defendant's Counsel and Plaintiffs Recommend
        Approval of the Settlement Strongly Indicates that the Settlement is Fair,
        Reasonable, and  Adequate ..................................................................14

        4. The Class's Reaction Overwhelmingly Supports the Settlement .........15

        5. This Settlement Serves the Public Interest...........................................15

        6. The Other Rule 23(e) Factors Support the Settlement..........................16

VII. CONCLUSION .................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Amos v. PPG Indus., Inc.*, 2015 WL 4881459 (S.D. Ohio Aug. 13, 2015) ................................. 12

*Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 382 (6th Cir. 1990) ...................................... 10

*Brent v. Midland Funding, LLC*, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) .................. 12, 15

*Carson v Am. Brands, Inc.*, 450 U.S. 79 (1981) ............................................................. 12

*Doe v. Ohio*, 2020 WL 728276 (S.D. Ohio Feb. 12, 2020) ................................................ 11

*Eisen v. Carlisle & Jacqueline,* 417 U.S. 156 (1974) ........................................................ 9

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D.
  Ohio 1991) ....................................................................................................................... 15

*Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981) ....................................................... 9

*Gascho v. Global Fitness Holdings*, LLC, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014) ........... 14

*Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ......................................... 15

*Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ..... 13

*Hightower v. Receivable Performance Management*, No. 2:22-cv-01683, ECF No. 85 (W.D.
  Wash Dec. 13, 2024) ........................................................................................................ 9

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) .............. 12

*In re Auto. Parts Antitrust Litig.*, 2016 WL 8200511 (E.D. Mich. Aug. 9, 2016) ........................ 8

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) .................................... 15

*In re Gen. Tire & Rubber*, 726 F.2d 1075 (6th Cir. 1984) .................................................... 12

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) .... 13

*In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486 (S.D. Ohio Aug. 18, 2009) ................... 15

*In re Telectronics Inc.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001) ............................................. 15

*Lewis v. Huntington Nat'l Bank*, 2013 WL 12231327 (S.D. Ohio May 30, 2013) ...................... 8

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) .............................. 10

*Long v. HSBC USA Inc.*, 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015) .................................. 13

*Migliaccio v. Parker Hannifin, Corp.* (N.D. Ohio Aug. 2, 2023; Doc. 42, ¶ 7) ......................... 16

*Miracle v. Bullitt Cnty., Ky.*, 2008 WL 3850477 (W.D. Ky. Aug. 15, 2008) ............................. 12

*Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016) ......................................................... 9

*Phelps v. Toyotetsu N. Am.*, No. 6:22-cv-106 (E.D. Ky. Oct. 25, 2023; Doc. 47,
  PageID # 542) .................................................................................................................. 16

*Pollard v. Remington Arms Co., LLC*, 896 F.3d 900 (8th Cir. 2018) ...................................... 10

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235 (6th Cir. 2011) ............ 12

*Roland v. Convergys Customer Mgmt. Grp. Inc.*, 2017 WL 977589 (S.D. Ohio
  Mar. 10, 2017) .................................................................................................................. 11

*Summers v. Sea Mar Cmty. Health Ctrs.*, 29 Wn. App. 2d 476 (2024) ................................... 9

*Tucker v. Marietta Area Health Care Inc.*, No. 1:11-cv-184-SDM (S.D. Ohio Dec. 8, 2023;
  Doc. 38, ¶ 7) ................................................................................................................... 16

*UAW v. Gen. Motors, Corp.*, 497 F.3d 615 (6th Cir. 2007) ................................................... 12

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013) ........................................... 10

*Vassalle v. Midland Funding, LLC*, 2014 WL 5162380 (N.D. Ohio Oct. 14, 2014) .................... 9

*Weisenberger v. Ameritas Mut. Holding Co.*, 2024 WL 3903550 at *3
  (D. Neb. Aug. 21, 2024) .................................................................................................... 9

iii

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)......................................................... 14

**Rules**

Fed. R. Civ. P. Rule 23(c)(2) .............................................................................. 8

Fed. R. Civ. P. 23(e)(2) ...................................................................................... 10

**Other Authorities**

Barbara Rothstein and Thomas Willging, Fed. Jud. Ctr., *Managing Class Action Litigation: A Pocket Guide for Judges* (3d Ed. 2010) .................................................. 7

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)............... 11,12, 15

Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) ......................................................................... 7

Fed. Jud. Ctr., *Manual for Complex Litig.* § 21.312 (4th ed. 2004) ............................ 8

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I.     INTRODUCTION

On June 13, 2023, the first of two class action lawsuits were filed against Defendant Marshall & Melhorn, LLC ("Defendant") alleging that Defendant failed to protect employees, their dependents, and other third parties' sensitive information ("Private Information") from a ransomware attack ("Action"). The actions were consolidated on July 21, 2023 and Plaintiffs filed a Consolidated Class Action Complaint ("CAC," ECF No. 10). After fully briefing Defendant's Motion to Dismiss (Doc. 13), the Parties stayed the matter (Doc. 18), and proceeded to mediation. Prior to attending mediation, the Parties exchange informal discovery in order to evaluate each side's respective position. Krzeski Decl., ¶ 5. The Parties attended mediation on April 30, 2024 with respected JAMS mediator Hon. Wayne R. Andersen ("Judge Andersen"), a highly respected third-party mediator. Krzeski Decl., ¶ 7. While the Parties made substantial progress towards resolution at mediation, they were unable to reach a resolution. *Id*., ¶ 8. The Parties continued discussions in the following weeks and were ultimately able to come to a resolution as detailed in the Settlement Agreement ("S.A.") (Doc. 24-2, PageID 544). *Id*.

The Class's substantial recovery in this case is a $800,000.00 non-reversionary Settlement Fund designed to cover all settlement costs (notice, fees, administration) and provide three separate forms of cash benefits to Class Members: (1) approximately $70.00 *pro rata* settlement[1] payments of the remaining Settlement Fund (after the payment of any documented monetary losses as

---

[1] As detailed *infra* § V(C), based on the current claims rate, Class Counsel expect a substantial upward deviation on the pro rata cash payment.

described herein, and after payment of attorneys' fees and expenses, the proposed Class Representatives' Service Awards, and the costs of Settlement Administration) to each Class Member who submits a claim and (2) reimbursement for documented out-of-pocket losses up to $5,000.00 per claimant, including without limitation, unreimbursed losses relating to fraud or identity theft; professional fees for attorneys, accountants, and credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs incurred on or after the Data Breach, through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. S.A., ¶ 2.1.

On August 23, 2024, the Court entered preliminary approval of the Settlement and conditionally certified the Class. *See* Order Granting Preliminary Approval of Class Action Settlement. Doc. 25. In doing so, the Court found the Settlement Agreement was "fair, reasonable and adequate" and that the Notices "meet[] the requirements of Fed. R. Civ. P. 23 and due process, and [provide] the best notice practicable under the circumstances, and shall constitute due and efficient notice to all persons or entities entitled to notice." *Id.* at ¶¶ 1, 8 (PageID # 680-683).

The Court-approved notice plan has now been executed and nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. As of December 26, 2024, of the 46,745[2] Class Members who were sent direct notice of the proposed settlement, **none** have filed an objection and only one has requested to be excluded. *See* Simpluris Decl., ¶¶27-30. Because the Settlement is a considerable result for the Class, particularly in view of the risks

---

[2] The Class consists of 46,745 individuals. Simpluris Decl., ¶9. The Settlement Administrator received over 47,412 files for potential Class Members from Defendant during the process of sending notice to the Class. *Id.* The Settlement Administrator then removed any filed relating to Class Members who were included twice (the deduplication process) yielding 46,745 unique Class Members. *Id.*

and delays involved in continued litigation and Defendant's financial limitations, Plaintiffs respectfully request that the Court grant final approval of the Settlement, grant Plaintiffs' pending Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards (ECF No. 26), and enter a final order and judgment dismissing this case.

## II.     INCORPORATION BY REFERENCE

Plaintiffs incorporate by reference Plaintiffs' Unopposed Motion for Preliminary Approval ("Motion for Preliminary Approval") (Doc. 24) and Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards ("Motion for Attorneys' Fees") (ECF No. 26).

## III.     BACKGROUND

Plaintiffs reference the Motion for Preliminary Approval (ECF No. 24, PAGEID 513-514) and Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Award (Doc. 26, PAGEID 687-690) for a detailed explanation regarding the factual and procedural background that ultimately led to resolution of this matter.

## IV.     SETTLEMENT TERMS

Plaintiffs reference the Motion for Preliminary Approval (Doc. 24, PAGEID 514-516) for a thorough analysis on the benefits to the Settlement Class—*i.e.*, out-of-pocket expenses up to $5,000.00, pro rata cash payments, and enhanced data security practices.

## V.     NOTICE TO THE CLASS

### A.  Direct and Digital Notice Program

Notice to the Settlement Class consisted of direct notice to individuals whose contact information (*i.e.*, mail or email) was in Defendant's possession and digital notice to individuals whose contact information was no longer valid or not in Defendant's possession. *See* Simpluris

Declaration *passim*. Defendant had contact information for 37,791 Class Members. Simpluris Decl., ¶ 9.

Under the Parties' Agreement and the Preliminary Approval Order, Simpluris formatted the Postcard Notice to be sent by mail, and a Long Form Notice to be sent via email. The Long Form Notice was also made available on the Settlement website. *Id*., ¶6. The Notice advised Settlement Class Members of their rights to submit a claim, request exclusion from the settlement, object to the settlement, or do nothing, and the implications of each such action. The Notices advised Settlement Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Settlement Class Members could obtain additional information. *Id*., ¶ 7. On or about August 27, 2024, Counsel for Defendant provided Simpluris with a data file containing 47,412 known Settlement Class Member names, mailing addresses, dates of birth and social security numbers, if known. *Id*., ¶ 8.

Upon receipt of the Class List, Simpluris reviewed the data to ensure it was in proper format for distributing the Notice via U.S. Mail. *Id*., ¶ 9. In an effort to ensure that the Notice would be delivered to class members, Simpluris compared the address data against the United States Postal Service ("USPS") National Change of Address ("NCOA") database and updated the data to a Settlement-specific database with the changes received from NCOA. *Id*. After review, Simpluris determined there were 20,141 records with an incomplete mailing address and performed a skip-trace to attempt to locate valid mailing addresses for these Settlement Class Members. *Id*. Additionally, Simpluris performed reverse look-ups in an attempt to locate email addresses for all Settlement Class Members. *Id*. Simpluris was able to locate 32,231 valid email addresses, and 37,791 complete mailing addresses. *Id*. 8,954 Settlement Class Members did not contain a valid

mailing address or email address. *Id*. 667 exact duplicates were removed, and the final class list was confirmed to contain 46,745 Settlement Class Members. *Id*.

On September 23, 2024, Simpluris sent the Email Notice to 32,231 Settlement Class Members for whom a valid email address was available. *Id.*, ¶ 10. Of those 32,231 Settlement Class Members, Simpluris successfully delivered Email Notice to 31,633 Settlement Class Members. *Id*. On October 7, 2024, Simpluris mailed the Postcard Notice to the 11,695 Settlement Class Members for whom a valid mailing address was available and did not successfully receive an Email Notice. *Id*., ¶11.

As of December 20, 2024, 2,345 Postcard Notices have been returned by USPS. For the mailings returned without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace) on these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. *Id*., ¶ 12. Simpluris used the Class Member's name and previous address to locate a more current address. *Id.* Of the 2,345 returned Notices, 1,307 Notices were re-mailed to either a newfound address or with forwarding addresses provided by USPS, and 1,038 Notices were determined to be undeliverable because no updated address was available. *Id*. On December 18, 2024, Simpluris sent an Email Reminder Notice to the 26,639 Settlement Class Members for whom a valid email address was available and who had not yet filed a claim. *Id*., ¶ 13.

In addition to direct notice by postcard and email, Simpluris executed a digital Notice Program to reach those Class Members for whom direct contact information could not be ascertained. *Id*., ¶ 14. The digital Notice Program ran from September 23, 2024, through October 8, 2024, and consisted of notice ads placed on Meta, Inc.'s, Facebook and Instagram social medial platforms, on other websites as programmatic ads ("website banner ads"), and on search results for Google Search. *Id*.

Simpluris used two techniques to display ads on the Meta platforms. First, Simpluris attempted to match known Class Members to their Facebook or Instagram profiles, and serve the notice ads directly to those individuals.[3] *Id*., ¶ 15. Second, Simpluris created a lookalike audience to display ads to users whose traits, interests, and online behavior closely matched those of known Class Members. *Id*., ¶ 16. Moreover, using Programmatic Banner Ads, a lookalike audience was similarly created for programmatic banner ads, and the ads displayed through the Google Display Network, which reaches over 90% of websites that display ads. *Id*., ¶ 17. Further, because it is common for Class Members who receive notice to check the legitimacy of the notice by conducting an internet search, Simpluris also displayed ads to users who searched for terms related to the case, class, or settlement on Google Search. *Id*., ¶ 18. The combined digital Notice Program resulted in 562,316 impressions, and 3,128 unique interactions ("clicks"). *Id*., ¶ 19.

### B.  Settlement Website and Toll-Free Telephone Number

Simpluris prepared and maintains a Settlement Website at www.marshallmelhorndatasettlement.com that includes important dates and deadlines, and Settlement-related documents, including the Class Action Settlement Agreement and Release, the Motion for Preliminary Approval, the Preliminary Approval Order, and a downloadable version of the Notice of Class Action Settlement and Claim Form. *Id*., ¶ 22. The Settlement Website has been available to the public since September 23, 2024. *Id*.

Settlement-specific toll-free telephone number was included in the notice and on the website for the purpose of allowing Settlement Class Members to make inquiries regarding the

---

[3] Simpluris used secure methods and procedures, including one-way encryption, when accessing or using Class Member data. All methods, procedures, and techniques reflect industry best practices for ensuring data privacy and security, and are commonly utilized by reputable notice administrators in similar cases.

Settlement. *Id.*, ¶ 23. The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement administration. *Id.* The toll-free telephone number included in the notice and on the website is 1-888-226-9511. *Id.* This telephone number is active and has been available to the public since September 23, 2024. *Id.* The Settlement-specific toll-free telephone number has received 75 phone calls between September 23, 2024, and December 20, 2024. *Id.*

### C. Effectiveness of Notice

Simpluris calculates that between postcard notice through the USPS, electronic notice via email, and digital notice as described above, 77.4% of the Class received at least one form of notice. *Id.*, ¶¶ 20-21. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[4] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[5] These facts confirm that notice was distributed in a reasonable manner to all class members who would be bound by the settlement and satisfied the Constitution's Due Process requirements.

The current deadline to submit a claim form was December 23, 2024. Simpluris Decl., ¶ 24. Upon initial review, Simpluris received 241 claim form submissions or a claims rate of approximately .52%.[6] *Id.* The expected pro rata cash payout per Class Member is approximately $2,087.49. Simpluris Decl., ¶ 15.

---

[4] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[5] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d Ed. 2010).

[6] As of December 27, 2024, 219/241 claim forms have been validated. *Id.*, ¶¶ 24-25.

Parties are also concurrently moving to extend the claims deadline by 45 days to allow Class Members additional time to file claim forms. *See* Doc. 27. Class Counsel believes an extension of claims deadline and an additional reminder notice will serve the best interests of the class in allowing additional Class Members to claim relief under the Settlement.

## VI.    LEGAL ARGUMENT

### A.  Final Class Certification for Settlement Purposes is Appropriate

This Court preliminarily approved class certification for Settlement purposes on August 23, 2024 Order. Doc. 25. At this juncture, final approval is appropriate.

#### 1.    The Elements of Rule 23(a) and Rule 23(b)(3) Are Satisfied

Plaintiffs incorporate by reference § IV(B) in the Motion for Preliminary Approval to assert that class certification under Rule 23 is warranted for settlement purposes. Plaintiffs' rationale is unchanged and, therefore, the Court should likewise certify the Settlement Class.

### B.  The Notice Program Preliminarily Approved by the Court was the Best Notice Practicable under the Circumstances and was Successful.

In class actions certified under Federal Rule of Civil Procedure 23(b)(3), notice must meet the requirements of Rule 23(c)(2). The latter rule requires that notice to the class be the "best notice that is practicable under the circumstances." FED. CIV. P. Rule 23(c)(2). *See In re Auto. Parts Antitrust Litig.*, No. 12-CV-00103, 2016 WL 8200511, at *10 (E.D. Mich. Aug. 9, 2016) (program satisfied Rule 23 and due process). The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (citing FED. JUD. CTR., *Manual for Complex Litig.* § 21.312 (4th ed. 2004)). There is no statutory or due-process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable

effort." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 175 (1974). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *See Franks v. Kroger Co.*, 649 F.2d 1216, 1223-23 (6th Cir. 1981); *Vassalle v. Midland Funding, LLC*, No. 3:11-CV-00096, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014), *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016).

As detailed *supra* §V, Class Counsel worked closely with the Settlement Administrator to develop and implement the Notice Program preliminarily approved by the Court. The Notice Program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). Doc. 24-2 (PAGEID 572-587). The notices directed Class Members to the Settlement Website or a toll-free number for additional information regarding how they could opt out of or object to the Settlement. *Id*.

The Settlement Administrator estimates that between direct notice and other forms of notice, the Notice Program reached approximately 77.4% of the Class received at least one form of notice. Simpluris Decl., ¶¶ 20-21.  The current claims rate of .52% is reasonable in the data breach context. *See, e.g., Hightower v. Receivable Performance Management*, No. 2:22-cv-01683, ECF No. 85 (W.D. Wash Dec. 13, 2024) (approving settlement with .65% claims rate); *Weisenberger v. Ameritas Mut. Holding Co.*, No. 4:21-CV-3156, 2024 WL 3903550 at *3 (D. Neb. Aug. 21, 2024) (finding parties efforts to afford class members the opportunity to obtain relief satisfied the Federal Rules and due process when 95,644 class action notices were sent to the settlement class and 1,200 members filed claims); *Summers v. Sea Mar Cmty. Health Ctrs.*, 29 Wn. App. 2d 476, 486 (2024) (finding trial court did not abuse its discretion in approving data breach settlement with 0.5% claims rate given that it considered the potential difficulty in reaching class members and the provision of *cy pres* relief.); *see also Pollard v. Remington Arms Co., LLC*,

9

896 F.3d 900, 905–06 (8th Cir. 2018) (finding district court did not abuse its discretion in approving settlement with 0.29% claims rate in non-data breach class action).

The Notice Program satisfies the structures of Rule 23 and due process and should be approved by the Court.

### C. The Settlement Agreement Merits Final Approval

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The determination of whether to grant final approval for the Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co*., 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc*., 908 F.2d 38, 42 (6th Cir. 1990)). The Sixth Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013).

The 2018 amendments to Rule 23(e) also contain specific factors for federal courts to consider in determining whether a class action settlement is fair, reasonable, and adequate. *See* FED. R. CIV. P. 23(e)(2). These factors include:

A. whether the class representatives and class counsel have adequately represented the class;

B. whether the proposal was negotiated at arm's length;

C. whether the relief provided for the class is adequate, taking into account: (i) the costs, risk, and delay of trial and appeal: (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class members claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

D. whether the proposal treats class members equitably.

*Id*. These amendments are not intended to displace the factors set forth in case law "but rather focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. at *Advisory Committee's Note to 2018 amendment*. Courts in this Circuit consider both sets of factors when assessing the reasonableness of a settlement and enjoy "wide discretion in assessing the weight and applicability of these factors." *Doe v. Ohio*, No. 2:91-cv-464, 2020 WL 728276, at * 3 (S.D. Ohio Feb. 12, 2020). All of the case law and 23(e) factors weigh in favor of granting final approval here.

  1. The Settlement Resulted from Mediated, Arm's Length Negotiations
     without any Risk or Evidence of Fraud or Collusion

Settlements resulting from arm's length negotiations conducted by court-approved counsel are presumptively reasonable. *See* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.41 at 90 (4th Ed. 2002); *see also Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval").

The Settlement was the result of extensive, contentious, arm's length negotiations between counsel with many decades of experience in handling complex, class action litigation. Krzeski Decl., ¶ 15. Settlement negotiations in this case took place over the course of several months and involved a full-day mediation session that was unsuccessful. *Id*., ¶ 16. No collusion existed during the settlement process. *Id.*

  2. The Complexity, Expense, Likely Duration of the Litigation, and
     Substantial Risk for Plaintiffs Warrants Final Approval of the Settlement

11

The Sixth Circuit has identified the likelihood of success on the merits as the most important factor a district court must evaluate in assessing the fairness of a class action settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011). A district court must weigh the likelihood that the class ultimately will prevail "against the amount and form of the relief offered in the settlement." *Carson v Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also In re Gen. Tire & Rubber*, 726 F.2d 1075, 1086 (6th Cir. 1984); *UAW v. Gen. Motors, Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.50 (4th ed. 2002)).[7] This case is no different in that it is a data privacy class action and a settlement at this stage of the case will avoid the risk of "costs, delays, and multitude of other problems associated" with class action cases. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See*, *e.g.*, *Hammond v. The Bank*

---

[7] *See also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) ("In general, most class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

*of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage).

Class certification is another hurdle that would have to be met—and one that has been denied in certain other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013). Further, if Plaintiffs are successful in obtaining certification of a litigation class, the certification would not be set in stone. *Long v. HSBC USA Inc.*, No. 14-cv-6233, 2015 WL 5444651, *11 (S.D.N.Y. Sept. 11, 2015) ("A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to FED. R. CIV. P. 23(f) or a motion to decertify by defendants, requiring additional briefing.").

Plaintiffs would likely face several strong legal defenses and difficulties in demonstrating causation and injury. Krzeski Decl., ¶ 17. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and Class Members. Given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. *Id*. Given the risks, costs, and potential delays inherent in litigating this class action to judgment, this factor weighs heavily in favor of final approval. *Id.* While Plaintiffs are confident in the strength of their claims, they are also pragmatic and aware of the various defenses available to Defendant, as well as the risks inherent to continued litigations. *Id*., ¶ 18. Defendant has consistently denied the allegations raised by Plaintiffs and made clear at the outset that it would vigorously defend the cases. *Id*., ¶ 19. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face the further risk of not receiving any relief at all. *Id*.

13

The Settlement offers immediate, significant, and substantial relief to all Class Members who submit a claim. The Settlement delivers real value to Class Members. Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation.  Thus, this factor too weighs in favor of granting final approval.

3. The Fact Plaintiffs' and Defendant's Counsel and Plaintiffs Recommend Approval of the Settlement Strongly Indicates that the Settlement is Fair, Reasonable, and Adequate

The Sixth Circuit has observed that, when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference. *See Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983) (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered"). Likewise, courts in the Sixth Circuit defer to the recommendations made by a class representative who, like the Plaintiffs here, were intimately involved in the litigation and supports the Settlement. *Gascho v. Global Fitness Holdings*, *LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement").

Class Counsel and Plaintiffs support this Settlement because it provides Class Members with immediate and substantial benefits. As the result of informal discovery conducted and extensive settlement negotiations, the Parties are in a position to fully analyze the strengths and weaknesses of their respective cases and determine that the Settlement at this stage of the litigation is appropriate. Krzeski Decl., ¶ 21. Accordingly, the informed recommendations of the Parties and their experienced counsel weigh in favor of granting final approval.

4.  <u>The Class's Reaction Overwhelmingly Supports the Settlement</u>

No Class Member has objected to the Settlement, only one Class Members has requested exclusion, indicating that the Class supports the Settlement. Although this is adequate evidence of the Class's support of the Settlement, the Parties have moved to extend to the Claims Deadline to allow additional time for Class Members to submit their claims. The lack of any objection and minimal opt-outs (i.e. a single one) supports final approval.

5.  <u>This Settlement Serves the Public Interest</u>

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL 3862363, at *12 (quoting 4 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 11.41 (4th ed. 2002)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.").[8] This Settlement serves the public's interest by avoiding protracted litigation and freeing up judicial resources. *See In re Telectronics Inc.*, 137 F. Supp. 2d 985, 1025 (S.D. Ohio 2001); *see also Hainey*, 617 F. Supp. 2d at 679; *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (noting that the settlement of a class action lawsuit served the public interest because it "avoid[ed] a time-consuming and expensive trial" and "eliminate[d] the possibility of any time-consuming and expensive appeals").

---

[8] *See also In re Nationwide Fin. Servs. Litig.*, No. 2:08–cv–00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 18, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (noting that "[p]ublic policy generally favors settlement of class action lawsuits").

Particularly in light of the immediate cash benefits that the Settlement provides to the Class Members, and the fact that this Settlement will avoid further discovery and expensive motion practice, this "overriding public interest" would be well served by approval of this Settlement.

6.  <u>The Other Rule 23(e) Factors Support the Settlement</u>

To the extent not addressed above, the remaining Rule 23(e) factors support the Settlement. The method of distributing relief was chosen to make the claims process as easy as possible. Rule 23(e)(2)(C)(ii). The attorneys' fees of one-third of the common fund are well within the range of reasonableness for fees in a case of this nature and will not be paid until the Effective Date. Rule 23(e)(2)(C)(iii); *see also* Doc. 26-1, PAGEID # 708 (listing cases supporting a fee request of 1/3 of the common fund in Ohio state and federal courts). The Northern and Southern Districts of Ohio, as well as the Muskingum County Court of Common Pleas, all recently applied the percentage of fund method to award one-third of the common fund in analogous data breach settlements that settled at or shortly after the pleading stage. *See Migliaccio v. Parker Hannifin, Corp.*, No. 1:22-cv-835-DAP (N.D. Ohio Aug. 2, 2023; Doc. 42, ¶ 7) ($583,333.33 fee award from a $1,750,000.00 common fund in a data breach class action settlement before the motion to dismiss decision was rendered); *Tucker v. Marietta Area Health Care Inc.*, No. 1:11-cv-184-SDM (S.D. Ohio Dec. 8, 2023; Doc. 38, ¶ 7) ($583,333.33 fee award from a $1,750,000.00 common fund in a data breach class action settlement after the motion to dismiss was decided); *Phelps v. Toyotetsu N. Am.*, No. 6:22-cv-106 (E.D. Ky. Oct. 25, 2023; Doc. 47, PageID # 542) (granting attorneys' fees of one-third of the common fund in a data breach class action settlement before a motion to dismiss decision was rendered). All Class Members are treated equitably relative to each other— they all have the opportunity for a *pro rata* payment of money. Rule 23(e)(2)(D). In total, all of the factors to be considered when determining whether to grant final approval weigh in favor of a finding that the Settlement is fair, reasonable, and adequate.

16

## IV.     CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Plaintiffs Hendrix and

Thiel respectfully request that the Court grant final approval of class action settlement, including

awarding Service Awards in the amount of $2,500.00 to each Class Representative, $266,666.67

in reasonable attorneys' fees, and $16,838.96 in litigation expenses, and enter the proposed Order

attached as **Exhibit 3**.

Date: December 30, 2024                          Respectfully submitted,

                                                 /s/ *Philip J. Krzeski*
                                                 Philip J. Krzeski (009571)
                                                 **CHESTNUT CAMBRONNE PA**
                                                 100 Washington Avenue South, Suite 1700
                                                 Minneapolis, MN 55401
                                                 Phone: (612) 339-7300
                                                 Fax: (612) 336-2940
                                                 *pkrzeski@chestnutcambronne.com*

                                                 **MARKOVITS, STOCK & DEMARCO, LLC**
                                                 Terence R. Coates (0085579)
                                                 119 East Court Street, Suite 530
                                                 Cincinnati, OH 45202
                                                 Phone: (513) 651-3700
                                                 Fax: (513) 665-0219
                                                 *tcoates@msdlegal.com*

                                                 David K. Lietz (*pro hac vice* forthcoming)
                                                 **MILBERG COLEMAN BRYSON PHILLIPS
                                                 GROSSMAN, PLLC**
                                                 5335 Wisconsin Avenue NW, Suite 440
                                                 Washington, D.C. 20015-2052
                                                 Phone: (866) 252-0878
                                                 *dlietz@milberg.com*

                                                 *Class Counsel for Plaintiffs and the Settlement
                                                 Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2024, I served a copy of the foregoing via electronic filing in the ECF system.

/s/ *Philip J. Krzeski*
Philip J. Krzeski (009571)